# CASES IN CHANCERY.

MARCH TERM, 1850.

---

## CATHARINE VALENTINE *v.* OSCAR J. VALENTINE.

In September, 1846, on a bill by a wife, who had left the husband's house and taken with her their only child, a son of fifteen months old, an order was made that the husband pay her $2.50 a week for or towards the support of said child and herself while she kept the child, until the further order of the Court.

In March, 1850, on the application of the husband, an order was made that the child be delivered to the custody and care of the husband.

In this case, which, under the names of Ballentine against Ballentine, several points have been heretofore ruled, (*vide* 1 *Hal. Ch. Rep.* 471, 519,) an order was made, on the 22d September, 1846, as follows : " In consideration that the child of the parties mentioned in the bill is of young and tender years, and requires the care and nursing of the mother, and that thereby the mother is less able to provide for her own support and maintenance, it is ordered that the defendant, Oscar J. Valentine, do pay to the said Catharine Valentine the sum of two dollars and fifty cents per week for or towards the support of said child and herself, while she keeps the child, until the further of the Court ; such weekly payment to commence from the first day of June last."

At the date of the above order, the child, being then about fifteen months old, was in the family of Philip Y. Redding, in Orange, in the county of Essex ; having been placed there by the complainant, Catharine Valentine, to be boarded in the said family, at $1 per week ; the board to be paid by the complainant.

Some time after the date of the said order, (it would seem from the evidence to be at least three months,) Valentine, the defendant, went to the residence of Mr. Redding, having heard that the child was there, and saw the child there. Mrs. Redding testifies, that Valentine then told her that he thought $1.50 per week was little enough for the child's board; and that the child's mother told her the same. From that time $1.50 per week was charged.

This witness further testifies, that Valentine told her that the board of the child was worth $1.50 per week; and that he was willing to give it; and if that was not enough, he was willing to give more; and said that he was able to bring it up a gentleman.

That the complainant visited the child frequently; for the last few months very often, and for the last few weeks certainly twice a week. At first she came about once a month to see it; that sometimes she stayed a night, or a day and night, or half a day, and sometimes longer; that once she stayed five days. That the complainant, when she left the child with her, Mrs. Redding, in September, 1846, was pursuing the business of nursing; she don't know long she pursued that business. After that, she boarded with a sister of witness, in Newark, and took in sewing from the shops. That witness was in the habit of taking the child with her, when she went to her sister's, in Newark; at which times she sent for the complainant to come and see the child, and she did so; and paid witness's fare for coming down—six-pence each way. When Mrs. Valentine left the child with them, she said they must look to her for the pay. That Mrs. Valentine boarded at witness's sister's, in Newark, when not out nursing; she went out nursing when she was called for, and boarded at witness's sister's at intervals, when not out, and took in sewing to pay her board. Witness went to her sister's several times when Mrs. Valentine was out nursing. Mrs. Valentine paid for the clothing of the child: she made some, and hired witness to make some, and paid her.

*Philip Y. Redding* testifies, that the child was left at his house by Mrs. Valentine; that he charged at first $1 per week for his

board (it was a son,) for the first three months, and after that $1.50; that he added the fifty cents according to orders from Mr. Valentine. He charged the board to Mrs. Valentine, and looked to her for payment. That she has paid him, for the board of the child, $68.06. That there is a Doctor's bill which he has not charged, as he did not know how much it is. He says that, at the first interview he had with Mr. Valentine, he, Mr. Valentine, was very glad to see the child; he came into the shop where witness was. He asked witness what board she (Mrs. Valentine) paid. Witness told him $1. He said that was not enough; that twelve shillings was little enough; said he would see witness have every cent; but witness must not let her take the child away. Witness says, that Mrs. Valentine took the child away about the 10th June, 1847. Witness went to Mr. Valentine and told him when she took the child away and did not return it. He said he could not pay witness, because he would have to pay it over again. Mr. Valentine said, if she took the child away he could not prevent it. Witness sued Mr. Valentine for the board of the child. Mrs. Valentine paid him the $68 at different times. She has receipts for it.

The defendant paid to the complainant, or her solicitor, the weekly allowance up to March 8, 1847; and has neglected to make any payment since. The child has been in the custody of the complainant since she took him from Mr. Redding's family.

Cross motions were now made; one, on the part of the complainant, for an attachment against the defendant for not paying the weekly allowance ordered by the Court to be paid by him, (an order to show cause why an attachment should not issue, having been previously made;) another, on the part of the defendant, to vacate the said order for the payment of the weekly allowance; and for an order that the child be delivered to the defendant, and that the defendant have the care and custody of the child.

*L. S. Goble* and *Wm. Pennington* for the complainant.

*Theo. Runyon* and *A. Whitehead* for the defendant.

THE CHANCELLOR.   An order will be made that the defendant pay to the complainant the arrears of the weekly allowance; and that, thereupon, the child be delivered to the defendant, to have the custody and care of him.

Order accordingly.